## 16721

WOODLE v. BROWN *ET AL.*

(74 S. E. (2d) 914)

*Mr. Charles W. McTeer,* of Chester, *for Appellants,*

*Messrs. Strickland & Simpson,* of Chester, *for Respondent.*

Feb. 27, 1953.

TAYLOR, Justice.

Respondent sought to recover actual and punitive damages for the alleged fraudulent breach of an oral contract with appellant whereby he was employed for the purpose of operating a news stand for appellants and was to receive a certain salary and three per cent commission on gross sales less shrinkage for doing so. This action was limited to recovery of the commissions allegedly being fraudulently withheld by appellants.

The case was tried before the Honorable Steve C. Griffith, presiding Judge for the Court of Common Pleas for Chester County, in November, 1951. Timely motions for nonsuit and directed verdict were made and overruled and the case submitted to the jury who found for respondent the sum of $240. Appellants now contend that it was error, first, to admit the testimony of the respondent that he had asked one Joe Cooper about the bonus prior to January 6, 1951; sec-

ond, that plaintiff offered no evidence on which a verdict could be based; and, third, that respondent was estopped by waiver.

The testimony shows that respondent began his employment August 15, 1950, and continued therein until January 6, 1951, when he was without notice summarily discharged by one Joe Cooper who is discribed by appellant as an "inventory checker"; but the evidence shows that he was the one who terminated respondent's employment, took over what cash there was on hand and the stock of goods; further, that he was the person with whom respondent dealt with extensively in his relationship as employee. Respondent further testified that he received no bonus for October, November, December; that he discussed this matter with Mr. Cooper on several occasions but was given various excuses as "my boss might be late for a few days on account of laying off" or "the lady who checks the inventory with the receipts is off on vacation"; that neither Mr. Cooper nor any one else told him of any shrinkage and that at the end of each month he went to Charlotte to see appellant Spann but was never able to do so. Cooper told him he was entitled to a bonus and never at anytime revealed to him that · there was shrinkage. This testimony was objected to by appellants on the ground that the Complaint stated that the demand was made on the date of discharge, January 6, 1951, and that such testimony was not in conformity with the pleadings, however, an examination of the testimony discloses that appellant himself went into this matter upon cross examination.

"Q. Well, when did you ask Mr. Cooper about the bonus? A. Every time he was down there that I saw him.

"Q. So then you asked about the money before January 6? A. Yes, sir.

"Q. Although you state in the paper—in this Complaint that it was on January 6 you asked about it? A. I was demanding it then. * * *

"Q. Now isn't it a fact that you were told when there was a shrinkage in your inventory? A. No, sir.

"Q. You didn't ask any questions about it? A. I asked him (Cooper) if there was any shrinkage and he told me at first the woman that run the place and who checked the inventory figures was absent but that he felt sure I would get a bonus.

"Q. Well, do you mean to say that you never paid any attention to how much inventory you had or anything about it? A. As many magazines as there are down there you can't very well tell if you are a few short or a few over.

"Q. Then did you ask him when he got through—ask Mr. Cooper how much inventory you had or what he found? A. He told me the same thing—'you can't tell much about it' or 'you had a good inventory.' He just passed it through conversation. There wasn't any doubt in either one of our minds about what was going to take place."

It seems clear that there is testimony to the effect that respondent had discussed the matter of bonus at sometime each month with Cooper, who the jury would have been justified in believing to be appellant's agent, and on the day of being discharged had demanded payment thereof, further this matter was gone into rather extensively by appellant on cross examination without any reservations and he cannot now complain that this testimony was not in conformity with the allegations of the Complaint.

The next question was that there was no evidence upon which a verdict could be based. Respondent testified that he and his wife were to receive the sum of $55 per week and three per cent of the gross weekly receipts; that from August 15th to September 15th he received the sum of $90.16 as bonus; that although his sales continued to increase in volume, he and his wife kept the business open longer hours than were required under the agreement in order to increase the sales volume and collect the three per cent; that he never thereafter received any further bonus payments; that each month as the inventory was checked by

Mr. Cooper, he made some complimentary remark about the inventory; that there was no doubt in the minds of either he or Cooper as to his being entitled to a bonus; that he was "always given an excuse"; that he was never at any time told of any shrinkage until the date of discharge. All records were kept by appellant but Cooper stated to him each month as he checked inventory that he had "a good inventory." Respondent was of the opinion that based upon the volume of business done between August 15th and September 15th for which he received a $90 bonus that he was entitled to a bonus of in the neighborhood of $500 from September 15 until January 6th, as there had been an increase in business over that period of time and that he was at no time told of any shrinkage at the time of inventory. Appellant Spann stated that respondent was to receive three per cent commission on total sales less what shrinkage might appear in his inventory; that there was a shrinkage which he discussed with respondent but was not sure that he told him the amount. Upon cross examination he stated that the inventory was not made on the day the business was taken over, that the last inventory was made on December 20th, and at another place the following testimony appears relative to the shrinkage:

"Q. How about in January? A. I didn't notify him in January.

"Q. Who notified him? A. Mr. Cooper came down.

"Q. Is he an agent of yours? A. Yes, sir.

"Q. He is an agent of yours? A. Yes, sir."

No bookkeeping records were introduced by appellant into the trial of this case but Mr. Spann testified that the total sales for the period which respondent was employed were $11,009.71 and had there been no shrinkage in inventory respondent would have been entitled to $330, that the bonus paid covered the period from August 15th to approximately September 15th for which sales amounted to $3,005.04 leaving $8,000 upon which no bonus had been paid, three per cent of which would amount to $240. He stated however that

the shrinkage amounted to $950.53, therefore, under the agreement respondent was not entitled to a bonus.

"In determining whether there was sufficient evidence to warrant submission of the case to the jury, it must be kept in mind that the fact that an injury may have occurred in one of several ways does not defeat a plaintiff's right of recovery if the evidence tends to sustain the reasonable probability of the one relied on. In a civil case the law does not require proof to a certainty. *Moseley v. Southern Railway Co.,* 164 S. C. 193, 162 S. E. 94, 95; *Worrell v. S. C. Power Co.,* 186 S. C. 306, 195 S. E. 638; *Rivers v. State Highway Department,* 186 S. C. 493, 196 S. E. 172." *Hill v. Polar Pantries,* 219 S. C. 263, 64 S. E. (2d) 885, 887, 25 A. L. R. (2d) 1080.

"The jury has the especial prerogative to decide the facts, if the evidence tends to sustain the reasonable probability of the manner or way relied upon by the plaintiff even if the injury might have occurred in one of a dozen ways. The law does not require proof of a certainty in a civil suit. *Lancaster v. South Carolina Power Company,* 181 S. C. 244, 186 S. E. 911." *Hiers v. South Carolina Power Company,* 198 S. C. 280, 17 S. E. (2d) 698, 701; also, *Smith v. Durham Life Insurance Company,* 202 S .C. 392, 25 S. E. (2d) 247.

It must be noted that the amount of the verdict was $240 which was the amount according to appellant's testimony that would have been due had there been no shrinkage. Respondent testified that there had been no shrinkage as far as he knew and that he had never been informed of any shrinkage until January 6th, the matter never having been discussed with him other than leading him to believe that his inventory was in good shape. Evidently the jury did not believe appellant's testimony that there was shrinkage in the amount of $950.53. Appellant's motion for nonsuit and directed verdict were properly overruled as it was necessary for the purpose of these motion to consider the evidence in the light most favorable to the plaintiff, *Cox*

*v. McGraham,* 211 S. C. 378, 45 S. E. (2d) 595, and under the Scintilla rule which prevails in South Carolina, if there is a scintilla of evidence, which is any material evidence that if true would tend to establish the issue in the mind of a reasonable juror the case should be submitted to the jury for its determination. *Taylor v. Atlantic Coast Line Railway Co.,* 78 S. C. 552, 556, 59 S. E. 641, 643; *Bushardt v. United Investment Company,* 121 S. C. 324, 113 S. E. 637, 639, 35 A. L. R. 637; *Turner v. American Motorist Insurance Company,* 176 S. C. 260, 180 S. E. 55; *Crawford v. Town of Winnsboro,* 205 S. C. 72, 30 S. E. (2d) 841; *Radcliffe v. Southern Aviation School,* 209 S. C. 411, 412, 40 S. E. (2d) 626; *Cox v. McGraham,* 211 S. C. 378, 45 S. E. (2d) 595; *Marks v. Industrial Life & Health Insurance Company,* 212 S. C. 502, 48 S. E. (2d) 445.

Appellants next contend that respondent was estopped by waiver. We see nothing to support appellants' position in this respect as the testimony clearly shows that respondent discussed the question of bonus with Mr. Cooper on numerous occasions and attempted to do so with appellant Spann but was never able to contact him until January 6th when he succeeded in doing so at his club in Charlotte but appellant Spann refused to discuss the matter with him. The evidence is not susceptible of the conclusion as a matter of law that respondent had recklessly disregarded his duty of availing himself of the opportunity and means at hand to protect his own interests in such a way as to be precluded from recovering. See *O'Connor v. Brotherhood of Railroad Trainmen,* 217 S. C. 442, 60 S. E. (2d) 884, 885.

For the foregoing reasons we are of the opinion that all exceptions should be overruled and the Judgment of the trial Court affirmed and It Is So Ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.